NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3587-23
               A-3603-23
               A-3771-23

LEUNNITH FIORAVANTE,

      Plaintiff-Respondent,

v.

MATTHEW FIORAVANTE,

      Defendant-Respondent.

_____

VENTURA, MIESOWITZ AND
KEOUGH, PC,

      Appellant.

_____

LEUNNITH FIORAVANTE,

      Plaintiff-Respondent,

v.

MATTHEW FIORAVANTE,

      Defendant-Respondent.

_____

JAMES A. VIGLIOTTI,

      Appellant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **August 7, 2026** |
| **APPELLATE DIVISION** |

LEUNNITH FIORAVANTE,

      Plaintiff-Appellant,

v.

MATTHEW FIORAVANTE,

      Defendant-Respondent.

_____

JAMES A. VIGLIOTTI,

      Respondent.

_____

> Argued (A-3587-23, A-3603-23) and Submitted (A-3771-23)
> January 27, 2026 – Decided August 7, 2026
>
> Before Judges Sumners, Susswein[1] and Augostini.
>
> On appeal from the Superior Court of New Jersey,
> Chancery Division, Family Part, Hudson County,
> Docket No. FM-09-2314-22.
>
> Bonnie C. Frost argued the cause for appellant
> Ventura, Miesowitz and Keough, PC in A-3587-23
> (Einhorn, Barbarito, Frost, Botwinick, Nunn &
> Musmanno PC, attorneys; Bonnie C. Frost, Jennifer
> Fortunato and Matheu D. Nunn, on the brief).
>
> James A. Vigliotti, appellant, argued the cause on
> appellant's behalf in A-3603-23.

---

[1] Judge Susswein was added to the panel after oral argument with the consent of all counsel to A-3587-23 and A-3603-23.

Buchan, Palo & Cardamone, LLC, attorneys for appellant Leunnith Fioravante in A-3771-23 (Stephanie Palo, on the briefs).

Steven M. Resnick argued the cause for respondent Matthew Fioravante in A-3587-23 and A-3603-23 (Resnick Law Firm LLC, attorneys; Steven M. Resnick, on the brief).

Resnick Law Firm LLC, attorneys for respondent Matthew Fioravante in A-3771-23 (Steven M. Resnick, of counsel and on the brief).

James A. Vigliotti, self-represented respondent in A-3771-23.

The opinion of the court was delivered by

AUGOSTINI, J.A.D.

In these three appeals arising out of the parties' matrimonial litigation, which were calendared back-to-back and consolidated for purposes of issuing a single Opinion, plaintiff, Leunnith Fioravante, her former attorney, James A. Vigliotti, and his firm Ventura, Miesowitz and Keough, PC (the Firm) challenge the family court's attorneys' fee award set forth in June 17, and June 18, 2024 orders. Additionally, plaintiff challenges the court's denial of her request for the return of her passport which was held pending her payment of the outstanding fee award.

We are asked to determine whether the family court abused its discretion in awarding attorneys' fees in favor of defendant Matthew

3

Fioravante and against plaintiff under the parties' postnuptial agreement (PNA) and the Frivolous Litigation Statute (FLS), N.J.S.A. 2A:15-59.1. We are also asked to determine whether the court erred in awarding frivolous litigation sanctions against Vigliotti and the Firm under Rule 1:4-8(a), (b)(3).

Vigliotti represented plaintiff during a plenary hearing to determine the enforceability of the PNA under New York law. Plaintiff alleged that defendant coerced her into signing the PNA by promising they would have a baby together if she signed the agreement. The family court rejected this allegation, found it wholly without merit, and enforced the PNA. The court then awarded attorneys' fees in defendant's favor against plaintiff, Vigliotti and the Firm.

Initially, the family court found plaintiff responsible for $206,197.91 in attorneys' fees pursuant to the PNA and under the FLS, and Vigliotti and the Firm, where Vigliotti served as of counsel, were found jointly and severally liable for $192,545.57 in attorneys' fees under Rule 1:4-8. On June 18, 2024, the court amended the June 17 order, stating that plaintiff owed $222,254.41 in attorneys' fees and Vigliotti and the Firm were jointly and severally liable for $208,602.07 of those fees.

We agree that the family court was permitted to award attorneys' fees under the PNA, as recognized by Rule 5:3-5(c)'s express language permitting

fees to a party successful on any claim for "enforcement of agreements between spouses." The court was required nonetheless to carefully analyze the Rule 5:3-5(a) and RPC 1.5 factors to establish the lodestar[2] and determine the reasonableness of the fees. Therefore, we reverse and remand the matter for a more complete analysis of those factors in determining the attorneys' fee award. We also hold that the family court misapplied its discretion in withholding plaintiff's passport until payment of the judgment for attorneys' fees was satisfied, thereby unduly restricting her right to travel.

Under the FLS, we conclude that the family court erred in finding the statute applicable to this pre-judgment motion and in finding that defendant's safe-harbor notices complied with Rule 1:4-8's requirement to provide adequate notice. We hold that the notices did not adequately alert plaintiff, Vigliotti and thus the Firm of defendant's intent to seek fees against all three by not describing the specific conduct of the attorney "alleged to be a violation of the [Rule]." Toll Bros., Inc. v. Twp. of W. Windsor, 190 N.J. 61, 69 (2007). Said differently, defendant's notices did not provide plaintiff and Vigliotti with

---

[2] "The lodestar calculation is defined as the number of hours reasonably expended by the attorney, multiplied by a reasonable hourly rate." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 445 (2001) (citing Rendine v. Pantzer, 141 N.J. 292, 334-35 (1995)).

A-3587-23

sufficient notice that he intended to seek a fee award against Vigliotti personally and the Firm for frivolous litigation. This procedural infirmity is fatal to defendant's application for frivolous litigation fees.

I.

We summarize the pertinent facts and procedural history from the trial record.

## A. Divorce Litigation

The parties were married on May 19, 2017. Before they were married, they entered into a prenuptial agreement.[3] On May 14, 2021, the parties entered into the PNA. Upon signing the PNA, the prenuptial agreement expired.

On May 6, 2022, plaintiff retained Vigliotti "for the [F]irm" to represent her in a "matrimonial/domestic relations matter." On June 17, 2022, on plaintiff's behalf, Vigliotti filed a complaint for divorce seeking, in part, to set aside the PNA.[4] On September 8, 2022, defendant filed an answer and counterclaim seeking, in part, enforcement of the PNA.

---

[3] The parties' prenuptial agreement is not at issue in this appeal.

[4] Previously, on January 5, 2021, defendant filed for divorce in New York.

Plaintiff moved for pendente lite support, and defendant cross-moved to enforce the PNA. On December 9, 2022, the family court granted pendente lite support without prejudice to a "Mallamo[5] adjustment and/or credit following determination of the enforceability of the parties' [PNA]." The court reserved defendant's enforcement application and attorneys' fees "as mandated by Article XVI(2) of the PNA" pending a plenary hearing and established a discovery schedule. Following the completion of written discovery, defense counsel deposed plaintiff.

On December 15, 2023, the family court issued an order continuing pendente lite support through February 2024. The plenary hearing was scheduled for February 13, 2024, and the court identified the issues to be determined as:

> Plaintiff's alleged coercion as a basis to not enforce the [p]ost[n]uptial Agreement, analysis of New York law on enforceability of the [p]ost[n]uptial Agreement (to be briefed by counsel, as opposed to choice of law, which plaintiff's counsel conceded will be New York law if the [c]ourt rejects plaintiff's coercion position), estoppel (plaintiff's acceptance of monies prior to the entry of the [c]ourt's Pendente Lite Order presumably paid pursuant to the [p]ost[n]uptial Agreement), whether plaintiffs reply Certification constitutes a sham affidavit, the impact and analysis of defendant's [Rule] 1:4-8 demand on attorney[s'] fees, liquidation of all amounts paid by defendant, total attorneys' fees

---

5 Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995).

A-3587-23

and costs and the amount of credit due to defendant, and the process to proceed to divorce the parties (whether the enforcement of the [p]ost[n]uptial Agreement [led] directly to the entry of divorce or is/are some intermediate steps warranted).  The [c]ourt specifically preludes from this Plenary Hearing consideration of any basis other than coercion by plaintiff to challenge the enforceability of the [p]ost[n]uptial Agreement.

In this order, plaintiff was directed to deposit her passport with the court.  On January 5, 2024, the court denied plaintiff's motion for reconsideration.

The parties agreed in advance that New York law governed the enforceability of the PNA,[6] while "New Jersey law govern[ed] the procedural/practice issue of whether plaintiff's post-deposition [c]ertification [was] a sham."[7]  The family court clarified that plaintiff had the burden of

---

[6]  Under New York law, postnuptial agreements are generally enforceable.  Gagstetter v. Gagstetter, 727 N.Y.S.2d 435 (App. Div. 2001); see also Hilgendorff v. Hilgendorff, 660 N.Y.S.2d 150 (App. Div. 1997).  In New Jersey, postnuptial agreements, also known as "mid-marriage agreements," are generally unenforceable as they are viewed as "inherently coercive."  Steele v. Steele, 467 N.J. Super. 414, 436 (App. Div. 2021) (quoting Pacelli v. Pacelli, 319 N.J. Super. 185, 191 (App. Div. 1999)).  "A mid-marriage agreement is 'entered into before the marriage [has] lost all of its vitality and when at least one of the parties, without reservation, want[s] the marriage to survive.'"  Ibid. (quoting Pacelli, 319 N.J. Super at 190-91).

[7]  The court applied New Jersey law to the court's analysis of the reasonableness of the attorneys' fees issue.  Neither party raised the issue of whether New York or New Jersey law applies, either to the family court or on appeal.  Thus, we deem it waived.  Green Knight Capital, LLC v. Calderon, 69

proof to establish the PNA's unenforceability based solely on the allegation of coercion.

During the pendency of this application, defendant sent three safe harbor notices to Vigliotti: two letters dated November 30, 2023, and January 8, 2024; and one email dated December 19, 2023. The letters made no mention of defendant's intention to seek fees against Vigliotti or his Firm for violation of Rule 1:4-8. The notices were sent only to Vigliotti and not to plaintiff nor the Firm. In a letter dated January 13, 2024, Vigliotti informed plaintiff of defendant's frivolous litigation claims and provided her with the safe harbor letters and email. He advised his client that, should they lose, "the sanctions could be severe against you."

B. Plenary Hearing on PNA's Enforceability

The plenary hearing was conducted over two days: February 13 and February 14, 2024. Three witnesses testified: the parties and Richard Schioppo, Esq., defendant's former attorney who represented him during the

---

N.J. Super. 390, 396 (App. Div. 2021) (quoting Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 319 (App. Div. 2017)).

negotiations and drafting of the PNA. On February 21, 2024, the family court issued a forty-three-page written decision and order finding the PNA enforceable under New York law. The court found defendant and Schioppo credible and determined plaintiff lacked credibility. The court set a briefing schedule along with a return date for a hearing on defendant's application for attorneys' fees.

On March 12, 2024, defendant filed a motion seeking attorneys' fees. During the pendency of the motion, plaintiff notified the family court of her concerns with her attorney's representation. As a result of these concerns, the court entered an order directing plaintiff to secure a new attorney within a week. The court also directed Vigliotti to place his malpractice carrier on notice.

Additional submissions were filed relative to the application for counsel fees, sanctions, and the family court's withholding of plaintiff's passport. On June 3, 2024, counsel for the Firm submitted a letter brief objecting to the imposition of sanctions against the Firm and asserting its lack of notice of the fee application.

C. <u>Motion for Attorneys' Fees</u>

On June 17, 2024, the family court conducted oral argument on the issue of counsel fees. On the same date, the court issued an order and written

10

opinion granting defendant's motion for an award of attorneys' fees against plaintiff pursuant to Article XVI (2) of the PNA. The court determined the amount of reasonable attorneys' fees owed by plaintiff totaled $206,197.91. The court also granted defendant's motion for frivolous litigation fees under the FLS and Rule 1:4-8 against plaintiff, Vigliotti and the Firm in the amount of $192,545.57. Plaintiff, Vigliotti and the Firm were ordered to remit the sums within thirty days of the date of the order. The court further denied, in part, plaintiff's cross-motion to return her passport.

The next day, the family court issued an amended order increasing the amount of attorneys' fees awarded to defendant based on a supplemental certification of services of fees through May 23, 2024. The order amended the amount of the judgments entered against plaintiff from $206,197.01 to $222,254.41, and against Vigliotti and the Firm from $192,545.57 to $208,602.07.

On appeal, plaintiff contends the family court erred in assessing attorneys' fees against her under the PNA because: (1) the fees awarded were excessive and unreasonable; and (2) the court did not consider her ability to pay, the circumstances of the parties, and other Rule 5:3-5 factors. Plaintiff further contends the court erred in assessing frivolous litigation fees against her because defendant's claims of frivolous litigation focused primarily on

counsel's actions.  Finally, plaintiff asserts the court erred in directing that her passport continue to be held and not returned to her because of the outstanding attorneys' fees award.

## II.

Generally, an assessment of attorneys' fees is left to the sound discretion of the trial court, Slutsky v. Slutsky, 451 N.J. Super. 332, 365 (App. Div. 2017), and is reviewed under an abuse of discretion standard, Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) ("[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001))).  We also review a court's decision to order frivolous lawsuit sanctions under the FLS, and Rule 1:4-8 under an abuse of discretion standard.  Borough of Englewood Cliffs v. Trautner, 478 N.J. Super. 426, 437 (App. Div. 2024) (citing Wolosky v. Fredon Township, 472 N.J. Super. 315, 327 (App. Div. 2022)).

An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).  "Reversal is warranted 'only if [the decision] "was not premised upon consideration of all relevant factors, was based upon

consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment."'" Bove v. AkPharma Inc., 460 N.J. Super. 123, 146 (App. Div. 2019) (quoting McDaniel v. Man Wai Lee, 419 N.J. Super 482, 498 (App. Div. 2011)).

We defer to the trial court's findings of fact "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see Gnall v. Gnall, 222 N.J. 414, 428 (2015). That review is altered, however, in family part cases. Our Supreme Court has noted that "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare, 154 N.J at 413. This deferential standard of review recognizes "the [family] court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413). We will not disturb those findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"[W]hile deference will ordinarily be given to discretionary decisions, such decisions will be overturned if they are made under a misconception of

the applicable law." O'Neill v. City of Newark, 304 N.J. Super. 543, 550 (App. Div. 1997). When the court's decision turns on a legal question that flows from established facts, the court's decision is not entitled to any deference, and our review is de novo. See Dempsey v. Alston, 405 N.J. Super. 499, 509 (App. Div. 2009).

III.

A. Attorneys' Fees Awarded Under the PNA

We begin with plaintiff's contention that the trial court erred in assessing the amount of attorneys' fees owed to defendant because those fees were excessive and unreasonable. She further contends the court erred by not analyzing the Rule 5:3-5(c) and RPC 1.5(a) factors in determining the reasonableness of the fees. "In the field of civil litigation, New Jersey courts historically follow the 'American Rule,' which provides that litigants must bear the cost of their own attorneys' fees." Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016). "However, 'a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract.'" Litton Indus. 200 N.J. at 385 (quoting Packard-Bamberger & Co., 167 N.J. at 440).

Generally, a court in a matrimonial action, both pendente lite and at final judgment, may award a party reasonable attorneys' fees "when the respective financial circumstances of the parties make the award reasonable and just."

14

N.J.S.A. 2A:34-23; see also R. 4:42-9.  Rule 5:3-5, subject to the provisions of Rule 4:42-9 (b), (c), and (d), allows for an award of fees for "any claim for . . . enforcement of agreements between spouses."  In deciding the appropriateness of an award of attorneys' fees, N.J.S.A. 2A:34-23 provides that the court "shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party."

Agreements resolving the parties' matrimonial disputes are "encouraged and highly valued in our system."  Quinn v. Quinn, 225 N.J. 34, 44 (2016).  The enforcement of these agreements is governed by basic contract principles and, as such, courts should discern and implement the parties' intentions.  J.B. v. W.B., 215 N.J. 305, 326 (2013).  "When the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result."  Quinn, 225 N.J. at 45.  "A narrow exception to the general rule of enforcing settlement agreements as the parties intended is the need to reform a settlement agreement due to 'unconscionability, fraud, or overreaching in the negotiations of the settlement[.]'"  Id. at 47 (alteration in original) (quoting Miller v. Miller, 160 N.J. 408, 419 (1999)).

A-3587-23

In this case, defendant, as the prevailing party, sought to recover attorneys' fees against plaintiff under Article XVI (2) of the PNA, which provides:

> If either party commences an action or proceeding, or files any motion, petition, or order to show cause, to modify, alter, rescind, declare null and void, or set aside this Agreement, in whole or in part, or to obtain property distribution or spousal support, other than is provided in and consistent with the provisions of this Agreement, then in such event if such party's action, proceeding, motion or order to show cause does not result in that party receiving substantially all of the relief requested, then that petitioning party shall pay all of the other party's reasonable attorneys', accountants', expert and other professional fees such other party incurred in defending against and/or opposing such action or proceeding. Both parties specifically consent that the amount of such reasonable attorneys', accountants', expert, and other professional fees and expenses may be decided by the court upon affidavit or affirmation as applicable, without need for an evidentiary hearing.

> [(Emphasis added).]

Having enforced the PNA, the family court relied upon this provision in finding plaintiff responsible for defendant's reasonable fees "incurred in defending against and/or opposing" plaintiff's challenge to the enforceability of the PNA.

At oral argument on defendant's motion, the parties agreed that the court did not need to consider the Rule 5:3-5(c) factors in its fee-shifting analysis.

Plaintiff now argues that the court erred in that regard and the fees imposed are excessive. Defendant argues that because the parties agreed that the court need not consider those factors, the court did not err in its analysis. We disagree.

"The assessment of counsel fees is discretionary." Slutsky, 451 N.J. Super. at 365. When deciding whether to impose attorneys' fees on another party, the court must engage in a two-step analysis. First, the court must decide whether to shift the fees in the first place, and if so, then the court must determine the reasonableness of the fees and to what extent those fees should be imposed on the other party. J.E.V. v. K.V., 426 N.J. Super 475, 493 (App. Div. 2012); R. 5:3-5(c).

In evaluating an attorneys' fee-shifting provision in the context of a marital agreement, the family court need not determine whether fee shifting is permissible because it is provided for by agreement of the parties as well as court rule and statute. The court must assess nonetheless whether the fee-shifting provision is fair and reasonable in the context of the agreement.

In the present case, the parties' agreement addressed the circumstances under which attorneys' fees shall be imposed. The plain language of the relevant provision clearly states that plaintiff as the non-prevailing party "shall pay all of the other party's reasonable attorneys' . . . fees." (Emphasis added).

A-3587-23

This provision expressly conveys the parties' intent not to subject the issue of whether fees should be shifted to the usual discretion of the family court as provided in Rule 4:42-9(a). The PNA provided for payment of reasonable attorneys' fees to the prevailing party if there had been a challenge to the PNA. Although the court concluded that the PNA was enforceable, the court needed to make specific findings as to whether this fee-shifting provision was fair, just and reasonable and, thus, enforceable. The court's decision lacked such a finding, summarily concluding that "[u]nder the PNA, plaintiff [was] entitled to a total of $176,000."

The second step of the analysis that the family court had to undertake was to determine the reasonableness of the fees sought. Regardless of the basis for a fee award, "fees . . . are governed by principles of reasonableness." Walker v. Giuffree, 209 N.J. 124, 127-28 (2012). A court's "first step in awarding a reasonable amount of attorney[s'] fees is determining the lodestar, 'which equals "the number of hours reasonably expended multiplied by a reasonable hourly rate."'" Jacobs v. Mark Lindsay & Son Plumbing & Heating, Inc., 458 N.J. Super. 194, 209 (App. Div. 2019) (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004)).

> [T]he trial court's determination of the lodestar amount is the most significant element in the award of a reasonable fee because that function requires the trial court to evaluate carefully and critically the

aggregate hours and specific hourly rates advanced by counsel for the prevailing party to support the fee application. Trial courts should not accept passively the submissions of counsel to support the lodestar amount[.]

[Pantzer, 141 N.J. at 335.]

To determine the reasonableness of the fees, a court must consider the nine factors in Rule 5:3-5(c). Steele, 467 N.J. Super. at 444; see also Primmer v. Harrison, 472 N.J. Super. 173, 191 (App. Div. 2022). Those factors are:

(1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of the award.

[R. 5:3-5(c) (emphasis added).]

In addition to considering the Rule 5:3-5(c) factors, the court must also consider the factors enumerated by RPC 1.5(a). See Chestone v. Chestone, 322 N.J. Super. 250, 256 (App. Div. 1999) (noting attorneys' fee awards must address the factors enumerated by Rules of Professional Conduct 1.5(a)). Under RPC 1.5(a), "the factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent."

Because the court is always responsible for determining the reasonableness of the attorneys' fees, these relevant factors must be considered. See Walker, 209 N.J. at 131. "All applications for counsel fees in family actions must address the factors set forth in RPC 1.5(a)." J.E.V., 426 N.J. Super. at 493 (citing R. 4:42-9(b)). In other words, this analysis cannot be waived by the parties. In this case, because of the PNA's fee-shifting provision, consideration of the Rule 5:3-5(c) factors was not for the purpose of determining whether to shift fees in the first place, but rather to determine the

reasonableness of those fees. We hold that the family court's consideration of the Rule 5:3-5(c) and RPC 1.5 factors is a nondelegable obligation and applies equally to the court's assessment of fees under a provision in a matrimonial agreement.

In evaluating the overall reasonableness of the fees, the court must begin by establishing the lodestar. Jacobs, 458 N.J. Super at 209.

> There are four considerations in setting the lodestar. The first is the reasonableness of the attorney[s'] fee, evaluated under the factors set forth in RPC 1.5(a). Second, the court considers the reasonableness of the time billed by the attorney, since a party is not entitled to [attorneys'] fees for excessive and unnecessary hours. Third, the court determines whether the award should be decreased because . . . plaintiff "achieved limited success in relation to the relief he [or she] had sought." Fourth, the court must decide whether the attorney is entitled to a fee enhancement if the attorney worked under a contingency agreement.
>
> [Heyert v. Taddese, 431 N.J. Super. 388, 443-44 (App. Div. 2013) (footnote omitted) (quoting Furst, 182 N.J. at 21-23).]

Our Supreme Court has described the lodestar as "the most significant element in the award of a reasonable fee because that function requires the trial court to evaluate carefully and critically the aggregate hours and specific hourly rate advanced by counsel for the prevailing party to support the fee application." Rendine, 141 N.J. at 335. The Court underscored the responsibility of trial

courts to review the affidavits of counsel carefully and "not accept passively th[ose] submissions." Ibid.

Although we have no doubt that the family court reviewed the attorneys' billing records, it did not determine the lodestar amount. First, the court did not address the reasonableness of each attorney's hourly rate by evaluating the RPC 1.5(a) factors, including the rates customarily charged in the locale for similar legal services. Defendant's attorneys' billing invoices and certification of services reflect time devoted to this matter by six attorneys with varying degrees of experience and whose hourly rates ranged from $370 to $510 to $550.

Next, the family court needed to examine more closely the significant amount of time spent on this single-issue case. For instance, counsel devoted nearly fifty hours to prepare for plaintiff's deposition and over one hundred hours to prepare for the two-day plenary hearing on a single issue. We acknowledge that the court "read each and every submission" and had "personal knowledge of the legal work performed," yet a closer analysis of the amount of work performed and a more detailed explanation was necessary to justify the significant hours devoted to this relatively straightforward case. Although the court noted that the legal work was necessary to address plaintiff's "constant shifting positions," there were no novel or particularly

22

challenging legal issues identified that would warrant extensive time or legal research. Even though the court found that "[a]ll of these legal fees [were] directly and proximately related to the lawsuit filed by plaintiff," it was nonetheless required to assess whether those hours billed were necessary and not excessive in light of the "single issue" to be decided.

We also note that the parties agreed that the family court need not consider the Rule 5:3-5(c) factors. Although there is overlap between the Rule 5:3-5(c) and RPC 1.5(a) factors, consideration of the Rule 5:3-5(c) factors assists the court in determining the reasonableness of the fees and must be considered in any family action. J.E.V., 426 N.J. Super. at 493.

We conclude that the family court was obligated to analyze all relevant RPC 1.5(a) and Rule 5:3-5(c) factors to establish the lodestar and assess the reasonableness of the fees. Because the court did not fully evaluate all relevant factors, we are constrained to remand the matter for a more complete analysis. On remand, the court shall evaluate all relevant factors and "state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)); see also R. 1:7-

23

4.  We express no view as to the reasonableness of any of those time entries and leave that to the family court on remand to evaluate in light of the relevant factors.

### B.  Return of Plaintiff's Passport

We turn next to plaintiff's contention that the family court erred in denying her request to return her passport until the outstanding attorneys' fee award was satisfied.  Defendant contends that the court correctly determined plaintiff was a flight risk as she has no family or employment in New Jersey and can leave the country due to her dual citizenship.  In denying the return of plaintiff's passport, the court stated:

> The arguments advanced by plaintiff are speculative, at best.  Defendant's counsel made clear in writing the passport will be sought to continue to be held pending plaintiff's satisfaction of any judgment entered. Plaintiff failed to comply with the December 9, 2022[] [o]rder directing her to secure employment.   That plaintiff states she can simply drive out of the country demonstrates plaintiff continues in her failure to appreciate the consequences of her actions and that she is a flight risk.  State v. S.N., 231 N.J. 497 (2018). That plaintiff has been adjudicated not credible and yet persists in making the same argument that have been rejected three times (on December 15, 2023, January 5, 2024 and February 21, 2024) raises the concern about the seriousness in which plaintiff is confronting her exposure under the PNA for attorneys' fees and costs, and therefore strongly militates in favor of impacting her liberty interest.  This is especially so given plaintiff has offered nothing by way of identifying any other security on which

A-3587-23

[d]efendant may rely to be made whole. To be clear, the court is not precluding travel. Plaintiff may travel outside the continental United States only if there is written consent from defendant or on application to the [c]ourt. To hold otherwise will constitute injustice to . . . defendant who is out approximately $300,000.

The court's reliance on State v. S.N., 231 N.J. at 500 to support the withholding of plaintiff's passport is misplaced. S.N. involved a pretrial detention decision. Id. at 502. The State moved to have defendant detained pretrial after charging defendant with first-degree aggravated sexual assault on a person under the age of thirteen, N.J.S.A. 2C:14-2(a)(1); fourth degree lewdness, N.J.S.A. 2C:14-4(b)(1); and second-degree child endangerment, N.J.S.A. 2C: 24-4(a). S.N., 231 N.J. at 501. The State contended defendant was a serious flight risk "because his . . . mother and sister live[d] in Canada," and he also posed a danger to others or the community. Ibid. The trial court "based defendant's risk of flight upon his dual U.S.-Canadian citizenship even though . . . defendant had 'lived in New Jersey [for] almost his entire life.'" Id. at 518.

In remanding the matter to the trial court, the Supreme Court held that the "evidence at the detention hearing [had] not overcome the [Criminal Justice Reform Act's][8] presumption of release." Id. at 519. The Court

---

[8] N.J.S.A. 2A:162-15 to -26.

concluded that the trial court abused its discretion in granting defendant's pretrial detention because its detention decision "rest[ed] on an impermissible basis," "was based upon a consideration of irrelevant or inappropriate factors," "fail[ed] to take into consideration all relevant factors," including "defendant's characteristics as he stood before the court, and reflects a clear error in judgment." Ibid. (quoting State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017) (second alteration in original) (citations omitted)).

The withholding of a passport has generally occurred in the context of a child custody or child support matter. See Innes v. Carrascosa, 391 N.J. Super. 453, 477 (App. Div. 2007) (ordering the retention of a party's passport until the child was returned to the other parent); see also Marzano-Lesnevich, 435 N.J. Super. at 247 (where court held that the child's passport would be held in trust during a custody dispute); cf. R. 5:3-7(a) (A family court may impose certain remedies for a violation of a custody or parenting time order).

In the present case, the family court cited no legal authority for the withholding of plaintiff's passport until she satisfied a judgment for attorneys' fees. During the pendency of this litigation, plaintiff had not failed to appear, particularly after the court ruled that the PNA was enforceable. The court also did not consider less restrictive means of securing payment before resorting to this more draconian remedy. Given the significance of the order to surrender

26

her passport and the fundamental nature of the right to travel, the court misapplied its discretion in withholding plaintiff's passport for this reason — the payment of a monetary judgment.  See Saenz v. Roe, 526 U.S. 489, 500 (1999); see also Bisbing v. Bisbing, 230 N.J. 309, 336-37 (2017); Sanchez v. Dep't of Hum. Servs., 314 N.J. Super. 11, 30 (App. Div. 1998) (concluding that "[t]he nature of the right affected . . . is a well-established, fundamental right to travel, recognized by New Jersey courts.")

IV.

A.  Frivolous Litigation Fees

We turn next to the issue of whether the family court erred by imposing frivolous litigation fees pursuant to the FLS and Rule 1:4-8 against plaintiff, Vigliotti and the Firm.  Plaintiff contends that the court's primary focus was on the conduct of her counsel and therefore, the court erred in assessing sanctions against her.  Vigliotti challenges the frivolous litigation sanctions, arguing that the court abused its discretion in imposing sanctions because:  (1) defendant failed to prove that Vigliotti, the Firm, or plaintiff pursued the case in bad faith; and (2) the finding of bad faith was not premised on all relevant factors. Vigliotti also alternatively argues that the fees were not reasonable nor did the court provide sufficient reasoning as to why the sanctions imposed were appropriate to "deter repetition" of such conduct.  The Firm asserts the family

court denied it due process when it made the Firm jointly and severally liable for sanctions without adequate notice; erred by failing to make adequate findings of fact or conclusions of law as to how the FLS applied to the Firm; and erred in imposing sanctions that went well beyond deterrence as intended by Rule 1:4-8.

We hold that the family court erred in finding the FLS applicable under these circumstances for two primary reasons:  (1) the FLS does not apply to motions and plaintiff's complaint was not frivolous in its entirety; and (2) the safe-harbor notices were deficient in alerting plaintiff, Vigliotti and the Firm, that fees would be sought against Vigliotti and the Firm in the event the litigation was deemed frivolous.

The FLS "permits a court to award reasonable counsel fees and litigation costs to a prevailing party in a civil action if the court determines 'that a complaint, counterclaim, crossclaim or defense of the non-prevailing person was frivolous.'"  Toll Bros., Inc., 190 N.J. at 67 (quoting N.J.S.A. 2A:15-59.1(a)(1)).  The FLS provides a "limited exception[] to the 'American Rule' for civil justice, whereby litigants are expected to bear their own counsel fees." Bove, 460 N.J. Super. at 147.  As a result,

> we have approached fee-shifting requests under the
> [FLS] and Rule 1:4-8 restrictively, because 'the right
> of access to the court should not be unduly infringed
> upon, honest and creative advocacy should not be

> discouraged, and the salutary policy of the litigants bearing, in the main, their own litigation costs, should not be abandoned.
>
> [Ibid. (quoting Gooch v. Choice Entertaining Corp., 355 N.J. Super. 14, 18 (App. Div. 2002)).]

The FLS applies only to a party who has filed a frivolous pleading, N.J.S.A. 2A:15-59.1(a)(1); McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546 (1993), while sanctions against an attorney "who engage[s] in frivolous litigation," may be sought under Rule 1:4-8. Toll Bros., Inc., 190 N.J. at 68.

Our Supreme Court in Lewis v. Lewis held that the FLS "refers . . . only to a 'complaint, counterclaim, cross-claim or defense.'" 132 N.J. 541, 545 (1993). "By its terms, the statute does not apply to motions." Ibid.

In this case, plaintiff's divorce complaint and defendant's answer and counterclaim sought to address the enforceability of the PNA. Before any divorce trial occurred, defendant cross-moved to enforce the PNA. In the family court's December 9, 2022 order, it reserved decision on defendant's enforcement application[9] pending a plenary hearing. Thus, it was defendant's

---

[9]  In its February 21, 2024 decision, the court noted that in December 2022, when it determined a plenary hearing was needed to resolve the enforceability of the PNA, "no trials or plenary hearings were permitted to be conducted in FM docketed matters in Hudson County" which contributed to the delay in scheduling this matter.

cross-motion that resulted in the scheduling of a plenary hearing on the PNA's enforceability.

The family court did not address, nor did the parties raise, the FLS' applicability to a motion under these unique circumstances. In its February 21, 2024 decision, the court referenced that "the assertion of attorneys' fees by defendant's counsel . . . will presumably encompass the preparation for and participation in the plenary hearing," and indeed, fees awarded encompassing time and labor in preparing for and conducting the plenary hearing. We recognize that the divorce complaint and counterclaim raised the issue of the PNA's enforceability. We are satisfied that the frivolous litigation fees were directly related to the plenary hearing on defendant's motion.

There was no determination made that plaintiff's entire divorce complaint was frivolous for the purpose of imposing sanctions under the FLS and Rule 1:4-8. As we held in Bove, "a pleading will not be considered frivolous for the purpose of imposing sanctions under Rule 1:4-8 unless the pleading as a whole is frivolous." 460 N.J. Super. at 155; see also McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 499 (App. Div. 2011) ("Sanctions are not to be issued lightly; they are reserved for particular instances where a party's pleading is found to be 'completely untenable,' or where 'no rational argument can be advanced in its support.'" (quoting United Hearts, LLC v. Zahabian, 407

N.J. Super. 379, 389 (App. Div. 2009))).  As we stated in McDaniel, "simply because 'some of the allegations made at the outset of litigation later prove[] to be unfounded does not render [the complaint] frivolous[.]'"  419 N.J. Super. at 499 (alteration in original) (quoting Iannone v. McHale, 245 N.J. Super. 17, 32 (App. Div. 1990)).  Thus, simply including a claim to void the PNA in her divorce complaint does not render plaintiff's entire complaint frivolous.

Applying a de novo standard of review to this question of law, and limiting the statute's application in accordance with its plain language, we hold that because the FLS does not apply to motions and the record does not support a determination that plaintiff's divorce complaint in its entirety was frivolous, we hold that the family court erred in awarding frivolous litigation sanctions under the FLS and Rule 1:4-8 in the context of this pre-judgment plenary hearing necessitated by defendant's cross-motion.  See State v. Cerefice, 335 N.J. Super. 374, 382 (App. Div. 2000) ("De novo consideration requires the reviewing judge to determine the case completely anew on the record made before the trial judge.")

Even assuming the FLS applied under these circumstances in light of the parties' complaint and counterclaim raising the issue of the PNA's enforceability, the family court nonetheless erred in finding that the "notices comport[ed] with the required safe-harbor provision under [Rule] 1:4-8(b)(1)."

31

An application for sanctions pursuant to the FLS is brought under Rule 1:4-8(b), which governs the procedure for seeking sanctions. "A litigant seeking sanctions under the Rule must . . . provide the attorney or pro se party with a procedural 'safe harbor'" notice. Toll Bros., Inc., 190 N.J. at 69 (citing R. 1:4-8(b)(1)). Regarding notice, the Rule provides:

> No such motion shall be filed unless it includes a certification that the applicant served written notice and demand pursuant to Rule 1:5-2 to the attorney or pro se party who signed or filed the paper objected to. The certification shall have annexed a copy of that notice and demand, which shall (i) state that the paper is believed to violate the provisions of this rule, (ii) set forth the basis for that belief with specificity, (iii) include a demand that the paper be withdrawn, and (iv) give notice, except as otherwise provided herein, that an application for sanctions will be made within a reasonable time thereafter if the offending paper is not withdrawn within 28 days of service of the written demand. If, however, the subject of the application for sanctions is a motion whose return date precedes the expiration of the 28-day period, the demand shall give the movant the option of either consenting to an adjournment of the return date or waiving the balance of the 28-day period then remaining.
>
> [R. 1:4-8(b)(1).]

"Strict compliance with each procedural requirement of Rule 1:4-8 is 'a prerequisite to recovery[,]' and failure to conform to the rule's procedural requirements will result in a denial of the request for an attorney[s'] fees sanction." Bove, 460 N.J. Super. at 149 (alteration in original) (quoting State

32

v. Franklin Sav. Acct. No. 2067, 389 N.J. Super. 272, 281 (App. Div. 2006)). As we underscored previously, the FLS and Rule 1:4-8 are to be "interpreted restrictively," and "[s]anctions should be awarded only in exceptional cases." Id. at 151. Relevantly, "even if a non-prevailing party does not complain about a deficiency regarding a safe-harbor notice, the judiciary itself has an institutional interest in assuring that the safe-harbor prerequisite to fee-shifting is strictly enforced." Id. at 155.

Defendant's counsel sent two formal frivolous lawsuit notices and one email only to Vigliotti on: "November 30, 2023, following plaintiff's deposition, December 19, 2023, following oral argument on the then pending sets of motions[,] and January 8, 2024, following the denial of plaintiff's motion for reconsideration." The family court correctly noted that two of the notices—the November 30, 2023 and January 8, 2024 letters—did not distinguish among plaintiff, Vigliotti or the Firm.

These letters generally stated that if plaintiff's "demand to set aside the parties [PNA]" was not withdrawn within a reasonable time, "an application for sanctions will be made within [twenty-eight] days of this written demand." Although the January 8, 2024 letter also included a demand that plaintiff's complaint be withdrawn or else sanctions will be sought, the letter only refers to the claim regarding the enforceability of the PNA as purportedly frivolous.

A-3587-23

As to pursuing fees against plaintiff and the Firm, only the December 19, 2023 email references pursuing such fees, and stating the notice would be amended:

> Please be advised that if we do not resolve, the [Rule] 1:4-8 letter previously sent to you will be amended, and then the fees will continue to escalate as the judge noted to complete your client's deposition and prepare and appear before the hearing will increase the exposure to at least $100,000. In addition, my client has consulted with civil counsel such that under the law he will pursue fees owed against your client and as allowed against your firm under the frivolous litigation law such that your carrier should be placed on notice as I understand the process from the civil attorney.

The January 8 letter that followed did not specify that fees would be sought against Vigliotti and the Firm unless the pleading was withdrawn. Neither the November 30 nor the January 8 notice warned Vigliotti about defendant's intent to seek frivolous litigation fees against him should the complaint not be withdrawn. Cf. Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 410 (App. Div. 2009).

Rule 1:4-8 requires that a safe-harbor notice must "set forth the basis" for the belief that an attorney or party violated the Rule "with specificity." R. 1:4-8(b)(1)(ii). The Rule's requirement that the notice must be sufficiently specific and detailed to provide an opportunity to "withdraw the assertedly offending pleadings" is an indispensable requirement for an award of fees

34

under the FLS.  Ferolito, 408 N.J. Super. at 408 (quoting Trocki Plastic Surgery Ctr. v. Bartkowski, 344 N.J. Super. 399, 406 (App. Div. 2001)).

Defendant did not strictly comply with the Rule 1:4-8 requirement to provide adequate notice to Vigliotti and the Firm by alerting them of the intent to seek attorneys' fees against them and by describing the specific conduct of the attorney "alleged to be a violation of the Rule." Toll Bros., Inc., 190 N.J. at 69.  Said differently, defendant's notices did not provide adequate notice to Vigliotti that he intended to seek an award of attorneys' fees against him personally and the Firm for frivolous litigation.

Defendant asserts that Rule 1:4-8 does not require direct notice to the Firm, "when the attorney guilty of the wrongdoing has been provided proper notice."  This contention is premised on adequate notice being provided in the first place to the attorney against whom sanctions will be sought separate and apart from the client.  Although Rule 1:4-8(e) defines the scope of a law firm's responsibility, it does not address whether separate notice to the firm is required before it can be held jointly and severally liable for "violations committed by its partners, shareholders, associates and employees." Presuming the Firm received notice when Vigliotti was served with the safe-harbor letters, the content of the letters did not alert Vigliotti and the Firm of defendant's intent to seek fees against both.  This lack of adequate notice

35

violates the express language of <u>Rule</u> 1:4-8 and contravenes the purpose of a safe-harbor notice requirement. <u>See</u> <u>Ferolito</u>, 408 N.J. Super. at 409 ("The obligation to serve a specific notice and demand 'further[s] the policies underlying the [FLS].'" (quoting <u>Toll Bros., Inc.</u>, 190 N.J. at 65)).

The safe-harbor notices did not put plaintiff on notice that defendant would seek attorneys' fees against her lawyer as well as plaintiff herself. Such notice is important to alert plaintiff of this potential consequence and give her an opportunity to seek new counsel and make an informed decision on how best to proceed. Additionally, plaintiff was not served contemporaneously with the safe-harbor notices upon their receipt by Vigliotti. Instead, Vigliotti provided plaintiff with copies approximately one month before the plenary hearing. As we noted in <u>Ferolito</u>, "[t]he rationale for requiring proof of bad faith is that clients generally rely on their attorneys 'to evaluate the basis in "law or equity" of a claim or defenses,' and 'a client who relies in good faith on the advice of counsel cannot be found to have known that his or her claim or defense was baseless.'" 408 N.J. Super. at 408. Alerting plaintiff to defendant's intent to seek fees against her lawyer is an important factor for her consideration in the decision-making process. We hold that the notices were deficient as to all three individuals—plaintiff, Vigliotti and the Firm.

A-3587-23

We add that Rule 1:4-8 does not require a safe-harbor notice to be served on both a represented party and his or her attorney perhaps because attorneys are required to keep clients reasonably informed about the status of a matter. See RPC 1.4. In service of a safe-harbor notice, best practices dictate that the notice should be served upon both the party and the attorney in the event of a conflict of interest and to ensure that adequate notice is given in advance of seeking frivolous litigation fees.

In sum, we vacate the family court's frivolous litigation sanctions against plaintiff, Vigliotti and the Firm under the FLS and Rule 1:4-8. As for the family court's award of attorneys' fees under the PNA against plaintiff, we reverse and remand for further consideration of the RPC 1.5(a) and Rule 5:3-5(c) factors as to the reasonableness of the fees assessed against plaintiff under the PNA. We also hold that the family court misapplied its discretion in denying plaintiff's request to return her passport and that provision in the June orders is also reversed. We direct on remand that plaintiff's passport be returned to her.

To the extent we have not specifically addressed arguments raised by the parties in their respective appeals, it is because those arguments are either rendered moot by our holdings, or else lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

37

Vacated in part, reversed and remanded in part for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division